# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MICHELLE MERCERI, | ) | No. 72615-3-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SHAWN CASEY JONES, | ) | |
| | ) | |
| Respondent. | ) | FILED: March 21, 2016 |
| | ) | |

LEACH, J. — In this quiet title and damages action, Michelle Merceri appeals the trial court's dismissal of her claims against Shawn Casey Jones. Merceri challenges the trial court's denial of any equitable relief, its refusal to apply judicial estoppel against Jones, its imposition of sanctions against her and her attorneys, and its denial of her motions for reconsideration. In response, Jones requests attorney fees for having to defend a frivolous appeal. Because the trial court did not abuse its discretion in rejecting Merceri's proposed equitable relief or her judicial estoppel argument or in sanctioning her and her attorneys, we affirm the trial court. But because she raises debatable issues on appeal, we decline to award fees to Jones.

NO. 72615-3-I / 2

## FACTS

Substantive Facts

In 2006, Merceri found a house for sale in Hunt's Point, Washington (the Property). She hoped to buy the house, remodel it, and sell it at a profit. To make her loan application more attractive, Merceri asked Shawn Casey Jones to cosign the mortgage loan and be on title to the Property. Jones agreed. In exchange, Merceri promised to pay Jones $15,000. Merceri agreed to pay the loan and all other costs associated with the Property. Jones agreed that Merceri owned any equity in the Property and any profits from its sale. Merceri also agreed to refinance or sell the house soon after buying it, thus relieving Jones of liability for the loan. Finally, at any sale or refinance, Jones agreed to quitclaim his interest to Merceri, ending his involvement with the Property.

In their loan application, Merceri and Jones misrepresented that Jones intended to live in the house. Without Jones's knowledge, Merceri inflated the purchase price of the home by $1,550,000 to qualify for a larger loan. Countrywide Bank loaned them $2,800,000 (the Loan) to purchase the Property and secured payment with a deed of trust in favor of Countrywide. The seller conveyed title to Merceri and Jones. Merceri later obtained a second loan secured by the Property, this one for $200,000. She used the loan proceeds to

-2-

remodel. She moved into the house in 2008 and has lived there since. Jones has never contributed financially to the Property.

Bank of America took over the Loan from Countrywide and holds Jones liable for it. Merceri stopped making payments on both loans in 2008. She filed for bankruptcy in November 2010, valuing the Property on an asset schedule at $1,600,000 and encumbered by $3,946,129 of debt.

In 2007 and 2008, several homeowners sued Merceri, Jones, and other partners, who had bought the plaintiffs' homes in a mortgage rescue operation. Those lawsuits settled by 2010. During mediation, Merceri agreed to repay Jones for a $140,000 debt she admitted she owed him because she anticipated a refinancing that would pay off the Loan and provide her cash to make this payment. Jones agreed to quitclaim his interest in the Property on receipt of the $140,000. But "Merceri's refinance did not close, Merceri did not pay Jones, and therefore Jones did not quit claim his interest."

Also in 2010, Jones and two other plaintiffs sued Avista Escrow Services, alleging that Avista employees notarized the plaintiffs' forged signatures on closing documents for several pieces of real estate, including the Property. The plaintiffs moved for default, asserting that Jones stood to lose $2,000,000 from a short sale of the Property because debts encumbering it exceeded the expected

sale proceeds in that amount. The court included this amount in the $3,400,000 it awarded the plaintiffs as a default judgment.

Procedural Facts

Merceri sued Jones in 2013 to quiet title in the Property and recover damages. Her complaint also requested "such . . . relief as may be just and/or equitable in the premises." Merceri claimed that Jones had slandered her title to the Property by refusing "to release his 'ownership interest.'" She alleged that Jones had admitted that his interest in the Property "has been satisfied in full." After Merceri filed her complaint, Jones twice offered to cooperate to sell the Property as long as he was released from the Loan. Merceri refused.

The trial court granted summary judgment for Jones on Merceri's slander of title claim but not her quiet title claim. After a trial, the trial court found the slander of title claim baseless and sanctioned Merceri and her attorneys for asserting it.

In discovery, Merceri failed to answer requests for admission (RFAs) that asked her to admit that Jones never caused the failure of any sale or refinance. She also failed to answer interrogatories asking her to state any reasons for denying the RFAs. The trial court therefore deemed the facts described in the RFAs admitted.

Less than a month before trial, Merceri moved to disqualify Jones's attorney, Matt Adamson, with a hearing on one day's notice. Merceri alleged that both Jones and Adamson engaged in a pattern of "non-intimate partner abuse." She called Adamson a "tool" for Jones's harassment of her. And she attached a "Patterns of Domestic Violence checklist." She based these claims on Adamson's request to the lender to accept a deed in lieu of foreclosure from Jones, which would have released Jones from liability on the Loan while taking Jones off title. The trial court denied these motions. The court later granted Jones and Adamson's motion for sanctions in part based on the motion to disqualify, finding "Ms. Merceri and her counsel engaged in bad faith and abusive litigation tactics and unnecessarily ran up the costs of this litigation."

The parties tried the quiet title claim to the court in May 2014. In Merceri's closing argument, she asked the court, for the first time, to require Jones to execute a quitclaim deed to be held in escrow pending Jones's release from liability for the Loan. Once the lender released Jones, the escrow agent would record the quitclaim deed.

The trial court found that Merceri wishes to remain in the house and believes that if the court removed Jones from the title, she would be able to refinance through the Washington Foreclosure Act Mediation Program. The trial court also found that Merceri admitted these facts: She consented to Jones

being on title to the Property. The two have no enforceable contract with respect to how or when to sell the Property or refinance the Loan. Jones never caused the failure of any refinance of the Loan. And Jones has never caused the failure of any sale of the Property. The trial court found that "Jones has a legitimate interest in staying on title until the Loan is repaid in full, or until Jones is otherwise released from liability by the lender or as a matter of law."

The trial court held that it would be inequitable to remove Jones from the title before his liability on the Loan is discharged. The court also rejected Merceri's "springing quitclaim" remedy. The court said it lacked the power to order this relief and, even if it had the power, "such a remedy would not be appropriate." Accordingly, the court dismissed all of Merceri's remaining claims with prejudice.

The trial court awarded Jones $24,338 in fees and sanctions. These comprised $4,000 in fees as CR 11 sanctions from Merceri's attorneys, Marc Stern and Susan Fullmer, and $20,338 in fees, costs, and expenses from Stern, Fullmer, and Merceri, jointly and severally, under RCW 4.84.185.[1]

---

[1] Jones had requested $49,555 in attorney fees, an amount the court found to be reasonable though it declined to award the full amount.

NO. 72615-3-I / 7

## STANDARD OF REVIEW

This court reviews de novo a trial court's decision about the appropriateness of some form of equitable relief.[2] Where equitable relief is appropriate, "trial courts have broad discretionary powers to fashion equitable remedies and we review the trial court's consideration of the equities for abuse of discretion."[3] This court "may affirm on any basis supported by the record, whether or not the trial court considered that basis."[4]

This court also reviews a trial court's application of judicial estoppel and award of sanctions for abuse of discretion.[5] A trial court abuses its discretion if it makes a manifestly unreasonable decision or exercises its discretion on untenable grounds or for untenable reasons.[6]

This court reviews findings of facts to see if substantial evidence supports them.[7]

---

[2] Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc., 168 Wn. App. 56, 77, 277 P.3d 18 (2012).

[3] Arzola v. Name Intelligence, Inc., 188 Wn. App. 588, 596, 355 P.3d 286 (2015).

[4] Amy v. Kmart of Wash. LLC, 153 Wn. App. 846, 868, 223 P.3d 1247 (2009) (upholding trial court's award of fees and costs); State v. Grundy, 25 Wn. App. 411, 415-16, 607 P.2d 1235 (1980) (appellate court must affirm on any ground supported by record).

[5] Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538, 160 P.3d 13 (2007); Stiles v. Kearney, 168 Wn. App. 250, 260, 277 P.3d 9 (2012).

[6] Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 860, 281 P.3d 289 (2012).

[7] In re Dependency of Schermer, 161 Wn.2d 927, 939-40, 169 P.3d 452 (2007).

ANALYSIS

Denial of Equitable Relief

The trial court made two conclusions of law about the relief Merceri requested in closing arguments: that the trial court did not have the authority to order that relief and that even if it did have the authority, it would not do so because that relief "would not be appropriate." Merceri challenges both these conclusions. Because we find that the trial court did not abuse its discretion in refusing to order a "springing quitclaim," we do not decide whether the trial court had the power to do so.

Merceri argues that the trial court had a duty to resolve the difficult situation she and Jones presented. She asserts that Jones agreed with the general concept of the "springing quitclaim" and that he objected only to her failure to request it in the complaint. She further argues that leaving the problem for resolution through the parties' cooperation was hopeless and the trial court knew it. She argues the court based its decision not to grant other equitable relief on an error of law that it lacked power to do anything other than quiet title in Merceri or dismiss her case.

The trial court did not abuse its discretion in denying Merceri equitable relief. The trial court did not make a manifestly unreasonable decision because,

as Jones points out, it was not a "'view that no reasonable person would take.'"[8] Before trial, Jones offered to cooperate in getting his liability released. From the complaint to the end of trial, Merceri did not ask the court for any relief except to remove Jones from title. She asked for a "contingent quitclaim" deed for the first time in closing arguments. She did not explain or offer evidence about how or when the contingency of Jones's release from the Loan would occur, whether refinancing was financially feasible, or what consequences would flow from her proposal. The trial court had discretion to determine whether the "springing quitclaim" would be inequitable, and under these circumstances a reasonable person could conclude that it would be. The trial court had no duty to order this relief.

Dismissal with Prejudice

Merceri contends she has other claims she can bring, including partition and breach of fiduciary duty, which sound in equity. Because she asked in her complaint for whatever relief the court found equitable, she contends that a dismissal with prejudice will prevent her from resolving the matter in the future. Merceri asks that if this court affirms, it clarify that Merceri retains the right to bring other and different claims against Jones.

---

[8] Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006) (internal quotation marks omitted) (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

"[A] dismissal 'with prejudice' appropriately follows an adjudication on the merits, while a dismissal 'without prejudice' means that the existing rights of the parties are not affected by the dismissal but are as open to legal controversy as if no judgment or dismissal had been entered."[9] When a trial court enters fact findings and dismisses a claim with prejudice, it indicates that it weighed the evidence and decided the merits.[10]

Merceri cites no authority supporting a dismissal of her claims on the merits and after trial without prejudice. And this court is not in a position to decide by declaration which claims Merceri can bring in future cases and which will be barred by estoppel doctrines.[11] We therefore reject Merceri's request.

Judicial Estoppel

Next, Merceri contends that the trial court abused its discretion in refusing to apply judicial estoppel to bar Jones's defense.

"Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by

---

[9] Parker v. Theubet, 1 Wn. App. 285, 291, 461 P.2d 9 (1969).

[10] Banchero v. City Council, 2 Wn. App. 519, 525, 468 P.2d 724 (1970); Schermer, 161 Wn.2d at 939-40.

[11] The first requirement for a "judiciable controversy is . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement." Bellewood No. 1, LLC v. LOMA, 124 Wn. App. 45, 49, 97 P.3d 747 (2004).

taking a clearly inconsistent position."[12] "The positions taken must be diametrically opposed to one another" for the doctrine to apply. The rule is meant "to protect the integrity of the judicial process."[13] It is not designed to protect litigants.[14] Courts look at three factors to determine if judicial estoppel applies:

> (1) whether a party's later position is clearly inconsistent with its earlier position, (2) whether judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled, and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. These factors are not an exhaustive formula and additional considerations may guide a court's decision.[15]

Here, Jones told the court in a different lawsuit, Jones v. Avista Escrow Services LLC, that his signature on the Property's loan documents was forged. He obtained a default judgment that included $2,044,171 for the difference between his total liability and the net proceeds realized from the sale of the Property to be applied to the debt. Jones testified in this case, however, that he either signed the documents or authorized his signature. Thus, Merceri contends, the trial court erred in allowing Jones to present evidence that he is an

---

[12] Kellar v. Estate of Kellar, 172 Wn. App. 562, 579-80, 291 P.3d 906 (2012).

[13] Kellar, 172 Wn. App. at 580.

[14] Johnson v. Si-Cor Inc., 107 Wn. App. 902, 907-08, 28 P.3d 832 (2001).

[15] Kellar, 172 Wn. App. at 580 (internal citation omitted).

owner of the house, liable for the note, or in any other way that would be inconsistent with his signature being forged.

The first judicial estoppel factor favors Jones. In his complaint in Avista, Jones said his signature was forged on the loan documents for the Property. Here, he testified that he "authorized" Merceri to sign for him but only for a $2,500,000 loan, not the $2,800,000 one they received. Those positions may be incoherent, but they are not "diametrically opposed."[16] In both Avista and this case, Jones represented to the court that he is on title to the Property and liable for the Loan.

The second factor does not help Merceri either. The judgment Jones received in Avista was a default judgment based on a complaint that asserted, as he does here, that he is liable for the Loan. The potential damages the Avista court calculated were the difference between the total loan debt and proceeds likely realized from a sale of the Property. The record does not support Merceri's assertion that Jones convinced the trial court here to dismiss her quiet title claim "because he attested that he authorized the loan." The trial court made no such finding. Instead, it found that Jones was on title to the Property and Bank of America was holding him liable. Because that finding is consistent with Jones's

---

[16] See Kellar, 172 Wn. App. at 581. The trial court noted, "[T]here is no authority to have somebody sign your name on real estate documents."

position in Avista, there is no risk of creating a perception that Jones misled either court.

Lastly, and for the same reasons that Jones's positions are not inconsistent, he would not derive an unfair advantage if not estopped. The lender holds Jones liable, and he has a legitimate interest in staying on title until the Loan is repaid or he is released.

Because none of the judicial estoppel factors favor Merceri, the trial court did not abuse its discretion in declining to apply the doctrine.

Sanctions

Next, Merceri asks this court to reverse the trial court's award of sanctions against her and her trial attorneys, Stern and Fullmer.

*Findings of Fact*

Merceri challenges the trial court's findings that her slander of title claim was not supported by any evidence of a false statement and her motion to disqualify was "made in bad faith and without a reasonable basis." We reject these challenges as substantial evidence supports both findings.

First, Merceri does not challenge the trial court's findings that she admitted that she consented to Jones being on title to the Property and that Jones never caused the failure of any refinance of the Loan or sale of the Property. Those

admissions alone are substantial evidence that Merceri's slander of title claim was unsupported.

Second, substantial evidence also supports the trial court's finding that Merceri made her motion to disqualify "in bad faith and without a reasonable basis." Merceri does not dispute the facts underlying that conclusion either: that she moved to disqualify Adamson on only one day's notice, accusing him of being a "tool" for nonintimate partner harassment and abuse because he attempted to negotiate a deed in lieu of foreclosure that would have brought an end to this lawsuit. Her attempts to recast her and her attorneys' actions as "intemperate in the heat of battle" and their belief that Adamson was working contrary to their interests do not weaken that evidence.[17]

*Conclusions of Law*

Merceri also challenges the trial court's conclusions of law that her slander of title claim was factually and legally baseless and her quiet title action legally baseless.

CR 11 authorizes a court to impose "an appropriate sanction" on parties, counsel, or both if a pleading is baseless, meaning it is factually or legally frivolous, and the attorney "failed to conduct a reasonable inquiry into the factual

---

[17] As Jones notes, Merceri has never specified her basis for concern about Adamson's conduct and potential status as a witness.

and legal basis of the claim."[18] RCW 4.84.185 provides a trial court with the power to sanction a party for reasonable expenses where all the claims in the lawsuit are frivolous.[19] A claim "'is frivolous when it cannot be supported by any rational argument on the law or facts.'"[20] Such "[s]anctions are against the party, not that party's attorney."[21] Trial courts also have "inherent authority to sanction litigation conduct . . . upon a finding of bad faith," e.g., delay or disruption.[22] Where the trial court awards fees which are inappropriate under the authority it cites but appropriate under different authority, this court may uphold the sanctions.[23]

In sanctioning Merceri under CR 11 and RCW 4.84.185, the trial court concluded her slander of title claim was legally and factually baseless and her quiet title claim legally baseless. The trial court did not abuse its discretion in reaching these conclusions.

---

[18] Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 220, 829 P.2d 1099 (1992).

[19] Stiles, 168 Wn. App. at 260; Biggs v. Vail, 119 Wn.2d 129, 133, 830 P.2d 350 (1992).

[20] Stiles, 168 Wn. App. at 260 (internal quotation marks omitted) (quoting Skimming v. Boxer, 119 Wn. App. 748, 756, 82 P.3d 707 (2004)).

[21] Stiles, 168 Wn. App. at 260.

[22] State v. S.H., 102 Wn. App. 468, 475, 8 P.3d 1058 (2000).

[23] Amy, 153 Wn. App. at 868.

First, as discussed above, Merceri does not challenge the trial court's findings that she admitted facts that are dispositive of her slander of title claim.[24] Nor does she contend that she did not know these facts before filing her complaint for slander of title and seeing it through to summary judgment. The trial court thus did not abuse its discretion in finding her slander of title claim to be legally and factually baseless.

Merceri's challenge to the trial court's finding that her quiet title claim was legally baseless is also meritless. The trial court found that "[t]he material facts were undisputed" and Merceri "had no plausible legal argument as to why a party can ask another to co-sign a loan and be on title and then sue to remove them from title while the loan is outstanding." Merceri contends that the quiet title issue was "hard fought" throughout in the trial court and notes that the court denied summary judgment on the issue. But the trial court made unchallenged findings of fact that Merceri admitted Jones did not attempt to hold the Property "hostage" and Jones had a legitimate interest in staying on title. The record thus supports the trial court's conclusion of law, and the court did not abuse its discretion.

---

[24] Merceri admitted she consented to Jones being on title to the Property and Jones never caused the failure of any refinance of the Loan or sale of the Property.

Further, the trial court found, as CR 11 requires, that Merceri's attorneys did not conduct a reasonable inquiry into the facts supporting their filings. The trial court stated, "It is hard to imagine how attorneys can think it is acceptable to move to disqualify opposing counsel" under the circumstances. It recounted the litigation tactics employed by the attorneys and concluded their "allegations were plainly made in bad faith and without a reasonable basis." These findings of fact satisfy CR 11.[25]

*RCW 4.84.185 Limitations*

RCW 4.84.185 allows for sanctions against parties but not attorneys. Merceri does not raise the issue here, nor did her trial attorneys Stern and Fullmer raise it below, presumably due to conflicts. Nonetheless, the trial court erred in holding Stern and Fullmer liable for fees under RCW 4.84.150.

This court can affirm sanctions on any basis supported by the record, however.[26] The trial court found that Merceri's slander of title claim was legally and factually baseless and her quiet title claim legally baseless. As discussed above, those findings were not an abuse of discretion and were sufficient to

---

[25] Compare Harrington v. Pailthorp, 67 Wn. App. 901, 913, 841 P.2d 1258 (1992) (holding that finding attorney "'should have known that the claims he advanced were without merit'" is equivalent to finding attorney failed to conduct a reasonable inquiry), with N. Coast Elec. Co. v. Selig, 136 Wn. App. 636, 649, 151 P.3d 211 (2007) (holding CR 11 not satisfied where trial court "did not state with specificity [attorney]'s sanctionable conduct").

[26] Amy, 153 Wn. App. at 868.

-17-

support CR 11 sanctions. The court made an unchallenged finding that $49,555 in fees and $4,338 in expenses were reasonable. The trial court thus had authority under CR 11 to sanction Stern and Fullmer, as well as Merceri, $24,338 in fees, costs, and expenses. We affirm these sanctions even though the trial court cited the wrong authority in ordering them.

Lastly, Merceri challenges the timeliness of Jones's motion for RCW 4.84.185 fees and costs, filed 31 days after the court's final order. Because the thirtieth day, July 6, 2014, fell on a Sunday, CR 6(a) allowed Jones until the next day to file his motion.[27] He timely filed the July 7 motion.[28]

Motions for Reconsideration

Merceri also argues that the trial court erred in denying her motions for reconsideration.[29] In addition to reasserting the merits of her claims, Merceri claims the trial court should have considered "new evidence" that the real estate industry recognizes the concept of a contingent quitclaim deed and that Jones perjured himself.

"We review a trial court's denial of a motion for reconsideration and its decision to consider new or additional evidence presented with the motion to

---

[27] See N. Coast Elec. Co., 136 Wn. App. at 650.
[28] We need not resolve whether the time limit ran from the court's entry of findings of fact and conclusions of law or its final judgment, which was entered in August 2014.
[29] See CR 59(a).

determine if the trial court's decision is manifestly unreasonable or based on untenable grounds."[30] Merceri does not contend that the trial court's decisions to reject her motions for reconsideration violated this standard. Nor could she: whether the real estate industry accepts "springing quitclaims" was never at issue, and the trial court repeatedly questioned and rejected the relevance of Jones's contradictory statements about forgeries. The trial court did not abuse its discretion by denying her motions for reconsideration.

Fees and Costs on Appeal

Finally, Jones contends that this appeal is frivolous and this court should award him attorney fees and costs for having to defend it.

Under RAP 18.9, this court may sanction a party who files a frivolous appeal. An appeal is frivolous when it "presents no debatable issues upon which reasonable minds might differ, and . . . is so devoid of merit that there is no possibility of reversal."[31] If a party raises only one debatable issue, the appeal is not frivolous.[32] This court must examine the record as a whole and resolve doubts in favor of the appellant.[33]

---

[30] Martini v. Post, 178 Wn. App. 153, 161, 313 P.3d 473 (2013).
[31] Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd., 170 Wn.2d 577, 580, 245 P.3d 764 (2010).
[32] Advocates for Responsible Dev., 170 Wn.2d at 580-81.
[33] Advocates for Responsible Dev., 170 Wn.2d at 580-81.

Merceri may be correct that the trial court erred in finding it lacked the power to order her requested relief. Although the trial court did not abuse its discretion in rejecting that relief, Merceri's claim was at least "debatable." Her argument for judicial estoppel is also "debatable," though meritless, because Jones's assertions in different court proceedings were arguably inconsistent. We thus decline to award Jones fees under RAP 18.9.

## CONCLUSION

Because the trial court did not abuse its discretion in declining to order Merceri's requested relief, declining to apply judicial estoppel against Jones, and finding that Merceri's claims were baseless, we affirm the trial court. Since Merceri raises debatable issues on appeal, however, we decline to award Jones attorney fees for this appeal.

_Leach, J._

WE CONCUR:

_Cox, J._     _Becker, J._